O8CUSECC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

          Plaintiff,

     v.                             23 Civ. 09518 (PAE)

SOLARWINDS CORP. et al.,
                                        Telephone Conference
          Defendants.
------------------------------x
                                        New York, N.Y.
                                        August 12, 2024
                                        2:30 p.m.

Before:

                 HON. PAUL A. ENGELMAYER,

                                  U.S. District Judge

                      APPEARANCES

U.S. SECURITIES AND EXCHANGE COMMISSION
     Attorneys for Plaintiff
BY:  CHRISTOPHER MARK BRUCKMANN
     KRISTEN WARDEN
     JOHN TODOR
     CHRISTOPHER JAMES CARNEY

LATHAM & WATKINS LLP
     Attorneys for Defendants
BY:  SEAN M. BERKOWITZ
     SERRIN ANDREW TURNER
     KIRSTEN CAROLINE LEE

1       THE COURT:  All right.  Good afternoon.  This is
2  Judge Englemayer.
3       The case is SEC v. SolarWinds and Brown, 23 Civ. 9518.
4       First of all, with respect to the plaintiff, the
5  Securities and Exchange Commission, who do I have today?
6       MR. BRUCKMANN:  Good afternoon, your Honor.  This is
7  Christopher Bruckmann for the Securities and Exchange
8  Commission, and joining me are Kristen Warden, John Todor, and
9  Christopher Carney.
10      THE COURT:  Very good.  Good afternoon.
11 Mr. Bruckmann, will you be taking the lead for the SEC?
12      MR. BRUCKMANN:  I will, your Honor.  Yes.
13      THE COURT:  All right. Thank you.
14      And who do I have for the defendants, SolarWinds Corp.
15 and Mr. Brown?
16      MR. BERKOWITZ:  Your Honor, you have Sean Berkowitz,
17 Serrin Turner, and Kirsten Lee from Latham & Watkins, on behalf
18 of SolarWinds and Mr. Brown.
19      THE COURT:  Very good.  And, Mr. Berkowitz, will you
20 be taking the lead for SolarWinds, for the defendants?
21      MR. BERKOWITZ:  Yes.
22      THE COURT:  And is our court reporter on the line?
23      THE REPORTER:  I am, yes, Judge.
24      THE COURT:  All right.  Good afternoon.  And, as
25 always, thank you for your service.

All right. This is a case management conference, a motion to dismiss decision that issued on July 18th. I want to begin by thanking counsel for the case management plan that you submitted some time ago, and more important, what I took to be your letter confirming that the schedule set in that plan still is what you are jointly recommending. I don't -- in light of that, I don't imagine this call will be terribly long or likely very controversial, but I do want to do what I do at conferences at this stage of the case, which is to get a more concrete understanding of the road from here.

So with respect to that, let me begin with you, Mr. Bruckmann, right now the case management plan anticipates fact discovery ending by October the 4th and expert discovery ending by December the 20th. From the SEC's perspective, what discovery in those categories are you going to be seeking?

MR. BRUCKMANN: Thank you, your Honor. We have approximately a dozen depositions that still remain to be taken. We have taken two already. We've been working with counsel for the defendant on scheduling those depositions. I believe nearly all of them are scheduled. There are two depositions of persons outside the United States that might take place after October 4th as contemplated by the case management order, and I don't know if there's any additional -- I doubt there's any additional paper discovery requests that will go out. There are still some responses to that where we

have been in discussions with counsel for the defendants.
Hopefully, we can resolve the outstanding issues without the
Court's intervention.  So I'm not going to get into the
substance of what we've been meeting and conferring on, but we
have been meeting and conferring and making progress.

        THE COURT:  Let me just cut you off at that point.
First of all, thank you.  As to the two international
deponents, I guess the only concern would be that those
depositions not be taken after the end point for expert
discovery because, as we'll get into in a bit, that's
ultimately the trigger for the next conference, and I would
like some assurance that you'll get that done, those done by
that deadline.

        MR. BRUCKMANN:  I'm not sure that will be the case,
your Honor, but we would be proceeding to summary judgment
without those depositions and understanding that we'd be
seeking to take these depositions to preserve them for trial
and would not be looking to extend any deadlines that are in
the case management order if those depositions are not
completed.  It can be time-consuming to take depositions in
certain foreign countries.  In this case we've been
coordinating with the Department of Justice with foreign
counsel and they have -- the Department of Justice has hired
local counsel to assist us with these requests.  So it is -- it
is somewhat time-consuming but we're not seeking to delay any

1    of the other dates on the schedule if these go past
2    December 20th when they take place.
3             THE COURT:  Was either deponent previously questioned
4    under oath?  Was there any prior testimony of those people?
5             MR. BRUCKMANN:  There was no testimony under oath from
6    either individual.  No, your Honor.
7             THE COURT:  So, just to be clear then, assuming we
8    move to summary judgment, on the schedule contemplated, you
9    would effectively be taking off the table the content of those
10   two depositions if they haven't taken place yet as of the time
11   of summary judgment briefing as a basis for opposing a defense
12   motion for summary judgment, or, for that matter, for --
13   supportive of plaintiff's motion for summary judgment?
14            MR. BRUCKMANN:  That is correct, your Honor.
15            THE COURT:  They would be useful for you for trial but
16   not for pretrial purposes, in effect?
17            MR. BRUCKMANN:  They -- if they are delayed at that
18   point we would be proceeding without the use of them.  I
19   wouldn't say they wouldn't be useful, but we would be -- we
20   would -- they're taking that risk in understanding that and not
21   seeking to delay the entire case because of those two
22   depositions.
23            THE COURT: Very good. All right. Thank you. Look,
24   I appreciate that.  If there comes a point in which it is
25   appropriate for this Court to order -- issue any order that is

1  useful in support of a practical process of obtaining the
2  deposition, obviously, I'm happy to entertain such an
3  application.
4          I think I cut you off before. I guess you were going
5  to go into --
6          MR. BRUCKMANN:  Yes, your Honor.  The parties had
7  exchanged information regarding the names and general subject
8  matter of the experts that they were planning to use in this
9  case.  Considering the motion-to-dismiss ruling, the SEC is
10 likely going to be withdrawing some of that because of the
11 narrower issues.  We have not made an absolute final decision
12 on that, but I think that the two areas of expertise that we
13 think are likely to still be at issue in this case are the
14 cybersecurity expert and the economic impact or materiality
15 expert that we provided notice, high level notice about, given
16 the importance of the order.
17         THE COURT:  And the cybersecurity expert, safe to say
18 that that person at least, in part, would be offering testimony
19 that, from your perspective, would bear on the accuracy or not
20 of statements of the security statement?
21         MR. BRUCKMANN:  Yes.  In part.  Yes.
22         THE COURT:  Okay.  And explain to me, just in a couple
23 of sentences, where the other expert fits in.
24         MR. BRUCKMANN:  So one aspect of any securities fraud
25 charge is whether the conduct was material and the economic

1  impact to a company from having information out there or not
2  out there is something that sometimes could be determined
3  through events studies.  So we have an economist that we are
4  working with who is going to be looking at companies that have
5  been in similar postures as SolarWinds and being if there is
6  event study that would do that allow him to help the jury
7  understand the economic impact of some of the statements that
8  is alleged to have been involved in the conduct.
9           THE COURT:  May I ask, without holding you to it, I'm
10 just trying to get a better understanding, often when I hear
11 about event studies, it's in the context of series of loss
12 causation and the extent to which market stock prices are
13 attributable to the revelation of undisclosed debt loss and the
14 like.  Is that what you have in mind when you're talking about
15 events study here or something else?
16          MR. BRUCKMANN:  I think it's similar to that, maybe
17 not exactly the same, but there's not -- in the case, as it
18 stands now, there's not the same kind of single event where the
19 stock price suddenly dropped and we're looking to determine
20 what the cause of that -- what the cause for that was, the
21 entity does not to need prove loss causation in order to prove
22 the fraud claim but it's similar type of expert work, yes, your
23 Honor.
24          THE COURT: All right.  I'll be interested in that.
25 All right.  Thank you.

And sticking with you, Mr. Bruckmann, I know that there are several dates on the case management plan that had passed as of the date of the motion to dismiss decision, although I think they were anticipated to have passed. They include, you know, the January date for initial disclosures, the January date for first document production requests, and the early July date for expert disclosures. I think you're saying all those things happened notwithstanding that we were still -- there was a pending motion to dismiss at the time of those deadlines.

MR. BRUCKMANN: Yes, your Honor. The parties have been proceeding with discovery throughout the first half or the first -- first part of the year. We've exchanged requests for production. We've exchanged requests for admission. We've even taken two depositions. So, yes, we have been making progress.

THE COURT: Very good. Thank you. Look, I just want to just say that I appreciate the fact that you've been working together both before the motion to dismiss decision issued and afterwards. It's always worth noting and commending.

All right. Turning to you, Mr. Berkowitz, sticking of the subject of discovery, what discovery do you envision, does the defense envision taking, either fact or expert?

MR. BERKOWITZ: So we've already exchanged written discovery, your Honor, and I don't think we're thinking there's

going to be any more of that.  We intend to examine the witnesses that the SEC has noticed for depositions either in a cross notice or just in a cleaning up the record type of how that's how it's proceeding with the two depositions that have occurred to date.  There may be, with the SEC, in the initial disclosures on January 5th of this year, disclosed 63 individuals as witnesses with potentially relevant knowledge.  Your Honor's motion to dismiss ruling was helpful in streamlining that and the SEC has revised that list on your ruling.  We're evaluating whether there are any witnesses that they have not identified that we would want to take, and I don't believe there would be more than one or two from that list that we would -- that we would take in addition to the ones that are already noticed.

THE COURT:  How many witnesses did the SEC's streamlining reduce the number to about?

MR. BERKOWITZ:  I think it cut it to well under half.  I think it's 29, I believe.  So it's a little less than half.

THE COURT:  Okay.  Thank you.  At this point, we're talking solely at this moment about fact witnesses, right?

MR. BERKOWITZ:  That's correct.

THE COURT:  Is there any, if I may ask you, I realize the nature of the case, particularly as narrowed, is very inward looking.  Is there -- is this a case in which, putting aside expertise, there's any third-party discovery?

MR. BERKOWITZ:  The third-party discovery that is taking place is largely of the analysts, your Honor, and we've had two analysts that have -- one has been deposed, one is noticed, and it may be that there's an additional one that would be taken, but that's the only third-party discovery that we're -- that we're contemplating.  They're obviously former employees, but I don't take those are third-party witnesses.

THE COURT:  Nor do I.  And are the analysts germane to materiality or something else as well?

MR. BERKOWITZ:  Materiality.

THE COURT:  Okay.  Great.  Expertise, expert --

MR. BERKOWITZ:  Yes.  So we had initially identified three experts, materiality, cybersecurity expertise and internal accounting control.  We have withdrawn the accounting control in light of your ruling, but we still have the cybersecurity and the materiality expert.

THE COURT:  All right.

MR. BERKOWITZ:  And also serving potential rebuttal to theirs in addition to the --

THE COURT:  Right.  It sounds as if the two experts you each have are very much reciprocal.  All right.  So that's very helpful.

Let me ask you this question, Mr. Berkowitz.  At the last -- at the conference we had in which we put in place the motion to dismiss schedule and the like, you had indicated that

Mr. Brown was definitely represented by King & Spalding, but that corporate counsel was taking the lead. I just want to make sure that if the claim against him survives or the claim against him survives that he remains separately represented, he's, notwithstanding your taking the lead here, his interests are independently represented and continues to be.

MR. BERKOWITZ: That is correct. Nothing has changed. We continue to represent Mr. Brown in our lead capacity. He has separate counsel as well. So nothing has changed since the initial status hearing with respect to that.

THE COURT: Okay. Great. All right. Look, both of you, thank you. I'm glad we were able to be on the schedule as previously forecast.

And you know from the case management plan right now we have a next conference date on January the 22nd at 2 p.m. I'm going to move that two days later purely because, between when we put the plan in place and now, I have put in place a several-week criminal trial, and right now, I've got it on Wednesday afternoon at 2 p.m., which will create a bit of a mess. So I'm going to have move it to January the 24th at 2 p.m. I assume that works for everybody. You'll let me know offline if it doesn't, and my law clerk will be in touch to tweak the date by a day or two. But I'm hopeful that doesn't change anything.

MR. BERKOWITZ: Your Honor, in your initial conference

1   docket order, it said that that would be done telephonically.
2   Is that still your intent?
3              THE COURT:  No.  It really -- well, if it's a
4   premotion conference, we probably can do it telephonically.  If
5   it -- and I think -- sorry.  Let me be clear.  Yes.  If it's
6   limited to being a premotion conference, we'll be able to do it
7   telephonically.  I have every expectation that I will
8   eventually have oral argument on the summary judgment motions
9   that will follow and those will be after the motions.  Yes.  It
10  would -- premotion can be done telephonically unless something
11  complicated has arisen that is added to our agenda.
12             MR. BERKOWITZ:  I was just asking, but you'll let us
13  know if it changes.
14             THE COURT:  Absolutely.  Totally fair question.
15             Well, here's the one thing I wanted to mention.  I
16  reviewed briefly with you at the conference back on
17  December 14th the process I use with respect to summary
18  judgment briefing, and the critical point here is that before
19  the first brief was submitted, I asked the parties to come
20  together and file what we call a joint stipulated facts.
21  Essentially, you're not stipulating to the relevance or
22  materiality of any facts, just to the truthfulness or to its
23  accuracy, but those divisions, which I get and insist upon in
24  every complicated commercial securities case are usually
25  valuable.  They're helpful, of course, for my chambers, in

organizing the facts, but they're mostly helpful by counsel to streamlining considerably the 56.1 statements or oppositions you would otherwise have to submit, in effect by stipulating to the case on which things occurred or the titles that are held or the authenticity of the documents and emails and whatnot. You get rid of the need to have to prove the fact that there is admissible evidence that supports it in your stipulation that establishes the fact. And so I'm constantly being told by counsel that that exercise streamlines your work later on considerably.

I'm telling you this now because I want you to get working on the JSM before we meet on January 24th. You should operate on the assumption that at the conference on January 24th I'll be setting a very brisk deadline for the submission of the JSM. In other words, I expect it to be rather far along, and if it cuts off from the deadline for the JSM will then be what I'm imagining will likely be the cross-motions for summary judgment, in any event, at least one side will likely be moving.

But I don't want to hear on January 24th that we haven't been confirmed. What you should do is once expert discovery is done, figure out who is moving for summary judgment. If it's one party, that person ought to -- that entity ought to be -- that party out to be making the first draft and the joint stipulated facts and giving the other side

comparable time to annotate it and to add to it.  If you're both still moving, I leave it to you as professionals to figure out whether it makes sense to exchange that at the same time or more likely for you to figure out a system where one of you goes first.  I'm not going to worry about that.  But the point is I'd like you to be very far along on January 22nd so we don't lose a bunch of time thereafter.  I'm expecting to set a relatively brisk briefing schedule, again keyed to the submission of the JSS.  I will be surprised if the deadline I set for the JSS is more than two weeks after the date of our premotion conference.  So, fair warning on that.

All right.  Let me just pause and ask if there's anything that anyone wants to raise or ask about vis-à-vis the summary judgment or the premotion process.

Mr. Bruckmann?

MR. BRUCKMANN:  Not for the SEC, your Honor.  Thank you.

THE COURT:  Mr. Berkowitz?

MR. BERKOWITZ:  No.  I think we understand and appreciate the comments, your Honor.

THE COURT:  Okay.  Very good.

The next subject I want to take up involves settlement.  To be clear, I'm not asking and I do not want anybody to share any contents with respect to the potential settlement positions, but I am interested in understanding just

briefly whether the parties anticipate ongoing settlement discussions, and if so, whether you have in mind using some form of a mediator, whether supplied by the Court or a privately.

Mr. Bruckmann?

MR. BRUCKMANN: Yes, your Honor. The parties, you know, consistent with the Court's instruction in the order after the ruling on the motion to dismiss, have discussed settlement, and without getting into what they are, the SEC has proposed specific settlement terms to the defendant. We proposed those terms just on Friday. So I don't believe they've had sufficient time to consider them and have a response back to us. The SEC is open to either mediation or other alternative dispute mechanisms. There is the standing order from the Court that we can take advantage of the Court's mediation. I don't know if that we see a particular need or usefulness for it right now, but if there comes a point in the settlement discussions when either that mediation or something else is appropriate, we remain open to it.

THE COURT: Very good. Thank you, Mr. Bruckmann. And thank you for moving quickly on that front.

Mr. Berkowitz?

MR. BERKOWITZ: Yes. So Mr. Bruckmann is right that they exchanged an offer with us. Based on the contents of the offer without getting into the specifics, we think it may be

1  useful to get somebody involved, your Honor, to help the
2  process, and I know last time you had asked about a magistrate.
3  We would be open to -- we would be open to that.  I don't know
4  if the SEC is open to an independent third party mediator, but
5  we do think, based on the content of the offer, that it may be
6  helpful to get some third party involved to help with the
7  process.
8              THE COURT:  Okay.  Look, the magistrate judge assigned
9  to this case is Barbara Moses who has successfully resolved any
10 number of various cases before me, and she also comes to the
11 bench from, as I recall, a firm where I believe she had
12 substantial exposure to, among other things, SEC enforcement
13 matters.  So you have the fortune here of having an assigned
14 magistrate judge sophisticated about the particular practice
15 area.  I'm obviously not forcing that on you, but I can offer
16 to counsel either a referral to her or to the mediation project
17 here.  I'll only do so though when my chambers is notified
18 there's mutual interest.  So, speak offline, and if there is
19 mutual interest, I'll refer the case according to the request I
20 get.  Obviously, if both of you have indicated there's a
21 possibility of using a third-party member, and that's -- that's
22 fine by me.
23             All right.  Very helpful.  That then, I think,
24 exhausts the agenda --
25             One other question, just, this will exhaust the

addenda:  In the case management plan, you had originally anticipated a four-week trial.  With the pruning of the case by the motion to dismiss, Mr. Bruckmann, what's the SEC's current estimate?

MR. BRUCKMANN:  If I remember correctly, the four weeks was for both sides to present their case.  I think the three weeks for both sides to present their case, possibly less, would be what I would say now.  I think we need to do a little bit more deposition work before I could get more precise than that.

THE COURT:  But essentially the end game narrative, involving Sunburst, that stuff drops away, and so that would have taken up trial time, that portion of the narrative is likely gone.

MR. BRUCKMANN:  I don't know if I want to completely agree with that, your Honor.  Certainly, the SEC filing related to Sunburst are gone, but we do see some connection between cybersecurity problems at SolarWinds and Sunburst.  So I don't want to take the position today that Sunburst is essentially off the table.

THE COURT:  Fair enough.  I didn't mean to put it quite that way, but to the extent there's a liability based on the Sunburst disclosures, that may have a bearing on the extent to which those events are factually developed.

MR. BRUCKMANN:  Yes.  That certainly will have an

1    effect on it.  Yes.
2             THE COURT:  Okay.  Mr. Berkowitz, does approximately
3    three weeks align with your best estimate right now?
4             MR. BERKOWITZ:  I would say, your Honor, based on the
5    Court's ruling and the current number of depositions, this
6    should be a two-week case.  I certainly don't think it's a
7    four-week case any longer, and while we may disagree with
8    Mr. Bruckmann on what is in and out, it may be more the subject
9    of motions *in limine* on whether anything relates to Sunburst.
10   So I won't belabor that, but I do think the case could likely
11   be done efficiently in a couple of weeks.
12            THE COURT:  All right.  That's helpful.  That now then
13   does exhaust my agenda for today.  But let me give each of you
14   a chance to raise anything on your mind.
15            Mr. Bruckmann, anything from you?
16            MR. BRUCKMANN:  Not from the SEC.  Thank you, your
17   Honor.
18            THE COURT:  All right.  And, Mr. Berkowitz, anything
19   from you?
20            MR. BERKOWITZ:  No.  That's that -- I think you
21   covered our agenda as well, your Honor.
22            THE COURT:  All right.  Look, given that I had
23   previously approved the case management plan, I'm not going to
24   reissue it.  I'll simply issue an order that reflects the
25   moving of the next conference date, which is the only amendment

1    to it.  As always, I want to just thank both sides for their
2    preparedness and professionalism.  It's a pleasure to supervise
3    a case with superb lawyers on both sides.  I look forward to
4    hearing from you down the road, whatever form that turns out to
5    be.
6             Be well.  Have A good rest the summer, everybody.
7             MR. BERKOWITZ:  You too.  Thank you.
8                                 o0o