# EXHIBIT 53

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

In the Matter of )
) File No. C-08755-A
SOLARWINDS, INC. ) AMENDED 8-3-2022

WITNESS: Rani Johnson

PAGES: 1 through 233

PLACE: Securities and Exchange Commission
175 W. Jackson Blvd.
Chicago, Illinois

DATE: Thursday, March 17, 2022

The above-entitled matter came on for hearing, via WebEx, pursuant to notice, at 11:01 a.m.

APPEARANCES:

On behalf of the Securities and Exchange Commission:

WILLIAM BRAD NEY, ESQ.
LORY STONE, ESQ.
BENJAMIN BRUTLAG
ERA CALHOUN
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549

On behalf of the Witness:

JULIE RIEWE, ESQ.
ANNA MOODY, ESQ.
CHRISTIAN CLARK, ESQ.
Debevoise & Plimpton
801 Pennsylvania Avenue NW
Washington, D.C. 20004
207-383-8000

AMY CANDIDO, ESQ.
Wilson Sonsini
One Market Plaza, Suite 3300
San Francisco, California 94105
415-947-2000

C O N T E N T S

| WITNESS | EXAMINATION |
|---|---|
| Rani Johnson | 6 |

| EXHIBITS: | DESCRIPTION | IDENTIFIED |
|---|---|---|
| 1 | Amended Formal Order | 5 |
| 19 | 8/19 Security Compliance Quarterly | 149 |
| 24 | 11/19 Security Compliance Quarterly | 167 |
| 25 | 2/20 Quarterly Risk Review | 192 |
| 33 | Q4 2020 Quarterly Risk Review | 200 |
| 34 | Email | 21 |
| 35 | Security Vulnerability Review | 171 |
| 46 | 9/3/20 Core IT-Netman Products RAF | 211 |
| 107 | Subpoena | 5 |
| 123 | 6/24/20 Email | 205 |
| 124 | 6/24/20 Email | 210 |
| 125 | 5/14/20 Email | 216 |
| 126 | 6/4/20 Email | 219 |
| 136 | Email | 13 |
| 137 | 3/20/20 Security & Compliance Project Business Justification | 33 |
| 138 | 6/28/19 Email | 38 |

C O N T E N T S(CONT.)

| EXHIBITS: | DESCRIPTION | IDENTIFIED |
|---|---|---|
| 139 | 10/31/19 SOC2 Executive Update | 81 |
| 140 | 4/15/20 Email | 126 |
| 141 | 5/22/20 Q2 2020 Quarterly Risk Review | 96 |
| 143 | 9/20/19 9/2019 Ops Review | 140 |
| 188 | 9/25/19 Email and attachment | 44 |
| 189 | 8/28/19 Email | 46 |
| 195 | 5/1/20 Email | 225 |
| 196 | Email | 227 |
| 201 | AD Authentication/Integration for Critical Systems | 162 |
| 202 | Email | 97 |

P R O C E E D I N G S

MR. NEY: We are back on the record at 11:01 a.m. on March 17th, 2022.

My name is Brad Ney and with me from the Commission are Lory Stone, Benjamin Brutlag and Era Calhoun. We're officers of the Commission for purposes of this proceeding.

We are today resuming the testimony of Rani Johnson in the matter of SolarWinds, Inc., C-08755.

Would counsel for the witness please identify themselves for the record?

MS. CANDIDO: This is Amy Candido from Wilson Sonsini Goodrich & Rosati, for the witness Rani Johnson.

MS. RIEWE: And Julie Riewe, Anna Moody and Christian Clark from Debevoise also for Ms. Johnson.

MR. NEY: Let the record reflect that a copy of the amended Formal Order of Investigation in this matter has been marked as Exhibit 1 and is available for examination during the course of this proceeding.

(SEC Exhibit No. 1 was previously marked.)

MR. NEY: Your testimony is pursuant to a Commission subpoena, which has previously been marked as Exhibit 107 in this matter.

(SEC Exhibit No. 107 was

**Brown and his team to assist in the investigation; is that correct?**

A That's correct, yes.

**Q Okay. Is this email string how that issue came to your attention?**

A I had a one-on-one with Steven Hess, who was a SCIP level under the DevOpps team that I had recently inherited. He made me aware in our meeting and I reached out to Tim to understand where this was and what was happening.

**Q Okay. And so the first line of this email says (garbled audio File 1007 10:06:05) gave me an overview." Is that (garbled audio File 1007 10:06:07) the overview of the issue?**

A No. The one-on-one was a standing meeting I had with him.

**Q I guess what I was asking was during that one-on-one, where he brought this to your attention, did he give you an overview of the issue?**

A He provided me with his understanding of what was happening. It was limited in scope and so I needed to have the full scope of the investigation and so I engaged Tim.

**Q And what was the understanding that he gave you of what was happening, as best you recall?**

A I don't specifically recall. I knew that his perspective, which is reasonably narrow for his scope of

responsibility, was not comprehensive enough. Steven runs DevOpps for the Cloud products. He was talking about a Core IT product and so I needed to have a better understanding of the Core part of the problem.

**Q Okay. And so what steps did you take to get that better understanding?**

A I reached out to Tim and asked him to investigate and keep me briefed.

**Q What is your understanding -- this referred to an SDL Orion Improvement Program, which I believe is also referred to as OIP; is that right?**

A Yes, OIP is the Orion Improvement Program, yes.

**Q And what is your understanding of what the Orion Improvement Program is?**

A It was a server that collected information related to customers' usage of Orion.

**Q Okay. Was that server maintained on SolarWinds's internal network?**

A Can you give me more detail to that question? Internal network means a lot of things.

**Q I guess what I'm asking is was that a SolarWinds server as opposed to a customer server?**

A That was a SolarWinds service.

**Q Okay. I think you said that it was a server that collected information about customers' systems; correct?**

A Yes. I'm being literal a little bit because it is a service on a server, servers.

**Q Okay. Where was that server hosted? Is that a SolarWinds server?**

A It is a -- I think -- I don't recall at this point whether or not this server or service is -- was a Cloud service or if it was on-prem. When I first came to know Orion Improvement Program or Project, it was a server hosted in an Austin data center. I do not know at this point where that service lived.

**Q Okay. A server that was located in an Austin data center, was that a SolarWinds data center in Austin?**

A SolarWinds Does not owns data centers, it's a collocation facility.

**Q Were the servers -- were there other SolarWinds servers that were hosted at that collocation facility?**

A Yes, at some point. And I apologize, I'm not trying to be difficult, Mr. Ney. The OIP server that I remember was in something called TX1, which was an Austin-based collocation facility where IT infrastructure primarily was hosted. The OIP is not generally considered to be IT infrastructure, but we do host some IT -- some non-IT infrastructure. At the point where OIP became a -- you'll see the difference in some of the signatures -- an on-prem asset, the DevOpps team was taking that asset and that might

have moved into a service that was no longer in the Texas data center. I just don't know where in process that was because the asset itself, again outside of when ITS was being managed not by IT team members.

**Q Okay. Earlier in this text string, there's a back and forth on Bates page ending in 269097 and then 269096. In the email from June 23rd on the Bates page ending 269097, Tomas Vrabel asked "Do we have SDL process in force for Orion Improvement Program server?" And then on the next page Paul Gray responds to him and says "I don't believe we cover OIP today with SDL, but we should."**

**Are you familiar with any risks that would be attendant to not covering OIP or the OIP server with an enforcement SDL process?**

A I'm out of my depth because I am not in the development team.

MS. RIEWE: So, don't speculate, Rani.

MR. NEY: So do you know the answer.

MS. RIEWE: If you know, you can answer, don't speculate.

BY MR. NEY:

**Q Do you know the answer to that?**

A I certainly don't.

MR. NEY: We're getting close to the end, I assume we'll go for about another half hour max. My preference

**actors initially accessed SolarWinds systems?**

A I never got a clear picture from my reading around the timeline and the attack from public materials.

MR. NEY: All right, I don't have any further questions at this time. Do any of my SEC colleagues still on line have any questions?

MS. STORY: I do not thank you, Brad.

MR. NEY: Ms. Johnson, before we go off the record, are there any statements from today or your prior testimony that you wish to clarify?

THE WITNESS: No additional clarifications, no.

MR. NEY: Okay. And Ms. Riewe, do you have any additional clarifying questions at this time?

MS. RIEWE: If we could just go off the record to make sure and then we'll come back.

MR. NEY: Okay, we are off the record at 7:30 p.m. on March 17th.

(A short recess

was taken.)

MR. NEY: We are back on the record at 7:36 p.m. on March 17th, 2022.

Ms. Riewe, before we went off the record, I had inquired whether you had any clarifying questions at this

time. Do you?

MS. RIEWE: I do not.

MR. NEY: Okay. We are adjourned for today. Let me grab what I have to read you.

Ms. Johnson, we have no further questions for you at this time.

We may, however, call you again to testify in this investigation.

If that should become necessary we will contact you through your counsel. We say that to everyone, so that doesn't mean we are going to call you back. Just so you know.

And we are off the record at 7:35 p.m. on March 17th, 2022.

(Whereupon, at 7:35 p.m., the examination was concluded.)

* * * * *

PROOFREADER'S CERTIFICATE

In the Matter of: SOLARWINDS, INC.
Witness: Rani Johnson
File Number: C-08755-A
Date: Thursday, March 17, 2022
Location: Chicago, Illinois

This is to certify that I, Christine Boyce, (the undersigned), do hereby certify that the foregoing transcript is a complete, true and accurate transcription of all matters contained on the recorded proceedings of the investigative testimony.

_______________________ _______________________
(Proofreader's Name) 3-30-2022

REPORTER'S CERTIFICATE

I, Jemima Nobleza Euell, reporter, hereby certify that the foregoing transcript is a complete, true and accurate transcript of the meeting indicated, held on 3-17-22, at Chicago, Illinois, in the matter of: SOLARWINDS, INC.

I further certify that this proceeding was recorded by me, and that the foregoing transcript has been prepared under my direction.

3-30-2022